Case 23-3784 First Brands Group LLC v. Neenah Inc. Argument not to exceed 15 minutes per side. Counsel, when you're ready, you may proceed for the appellant. Your Honor, Nicholas Menasche. I represent First Brands, the appellant in this case. I appreciate being here before you. This is my first appearance in the Sixth Circuit. I'm from New York, so this is a new experience. Good to have you. Thank you. Your Honors, This case, to me, is about fundamental fairness. This was a diversity action in which $500,000 of First Brands escrow money, earnest money, was deposited in an escrow account in the hopes of consummating a deal in which First Brands would purchase a paper processing facility located in Appleton, Wisconsin, 16 acres of land and some other assets, if the deal was consummated. The deal was not consummated when, during negotiations, Neenah, which is the defendant and the appellee in this case, essentially, during negotiations, changed the terms of the deal in a material way by creating the assumption of They changed the terms of the deal. I mean, when your original document says, we're going to work on this, it creates no obligations. You have negotiations back and forth. It's not like in Princess Bride. There is not a deal which people then change the terms of. You made a proposal. They made a counterproposal. You either were or weren't getting somewhere. That's right, Your Honor, and effectively, there was no meeting of the minds, in a sense. First Brands, they agreed that they would put together a definitive agreement, I believe, on April 8th, after signing this escrow agreement that's at issue here, which was signed on March 31st, along with the letter of intent. All of these documents are essentially transaction documents, which may be considered by this Court as part of what was the party's intent and whether there was a meeting of the minds. First Brands put forward on April 8th a definitive agreement. Neenah responded about two weeks later, and in their changes to the agreement, they added the assumption of liabilities related to the assets, which fundamentally changed what First Brands wanted to do in this deal. First Brands responded a little bit less than a month later and said, this isn't what we wanted. This isn't the deal that we wanted to make. As such, they asked, pursuant to the escrow agreement, that Neenah would jointly certify that the parties could not reach an agreement on the transaction. Neenah declined saying it was ready and willing to go forward with the transaction, but at that point, the two parties were diametrically opposed. They didn't agree on what the deal was about. You did not agree, or the other side did not agree, that they've discontinued efforts to consummate because they say, we still want to consummate on our terms. Yes, Your Honor. That's an interesting point that you brought up because in First Brands' complaint, essentially, which must be assumed as true for the purposes of the motion for judgment on the pleadings, which is how this case was decided below by Judge Calabresi, First Brands essentially said that the parties declined together, declined to reach an agreement. So Neenah should have jointly certified to the escrow agent that there was no deal, which would have satisfied Section 4, I think it's 4D2 of the escrow agreement, and Neenah declined to do that. That's what this fundamentally turns out. Why did not you, under 4.2C, send them a demand for them to confirm its willingness to consummate the acquisition, presumably on your terms, and then if they had not responded within five business days, then you tell KeyBank to release to you. 4.2B is the one that gets back to you, but B and C are exactly mirror images, right, that whichever side wants to move sends a demand letter and says, are you willing to consummate the acquisition, presumably on these terms, if they don't respond, then you're golden. So why didn't you do that? Who are the lawyers here? Respectfully, Your Honor, I think that the language, it's important to look at the language of 4.2B, which is I think what you're referring to here, which says, upon receipt by escrow agent of written certification from First Brands that Neenah has declined to consummate or failed to confirm in writing within five business days of a request for the same, its willingness to consummate the acquisition, escrow agent shall release the money to First Brands. In that case, what happened was First Brands, I believe, I have a timeline here, Your Honor, I can take you through it quickly. I so do I, and the problem was you didn't move promptly. All this needed to be done before May 31, otherwise you would get the default to Neenah. Well, respectfully, Your Honor, actually I think what happened was on May 18, 2022, First Brands actually informed Neenah that the changes were unworkable and it believed the party's willingness to consummate were unsuccessful. That was, and at that point in that email, admittedly it was an email, but it's a writing, it said, please jointly certify with us under 4.2D2. Neenah said, no dice, we're ready and we're willing and able, or something to that effect. Essentially, it was at that point. It was clear that the certification issue was expressly addressed and resolved one way or the other. The language between the parties to that effect becomes important, so if you have that language, you should, between the parties or one party expressly or explicitly addressing the issue, you should quote it back to us, but you keep making broad references without the specific language that you're relying on here. You're right, Your Honor. Specifically what Neenah said in a May 20, 2022 email back to First Brands when First Brands asked for the joint certification, Neenah said they refused to jointly certify, stating it remained, quote, ready and willing to proceed to consummate. I'm still not following you. To whom was that statement provided? Your Honor, it was provided to First Brands, which is why First Brands could then not communicate to the escrow agent under 4.2B that Neenah had declined to consummate, because then First Brands would have to comply by faith, and First Brands didn't want to do that. Do you claim that the request for joint certification was indeed the 4.2B request? I hadn't seen that argument made. Your Honor, I believe that the 4.2B request was made in the May 18, 2022 email, and I don't think the parties argue that it wasn't. I think where the parties disagree is Neenah is effectively saying they had no obligation to jointly certify that the deal was not going to go forward. So therefore, under 4.2D2, you go into the all other cases situation and the money goes to Neenah, and the fundamental issue here in this case is that because of that, by Neenah's intransigence to jointly certify, despite the fact that there was no deal, it gained $500,000. The letter of intent is very clear that the parties have no rights and obligations under this deal until they execute a definitive agreement. Well, the problem is some of the language, perhaps some of the language you're referring to constitutes back and forth negotiation between the parties as to what they're going to do or what they're going to agree upon, and what you would need, I guess, to present is to us the specific notice that there was a certification or that one party or the other or the parties had come to the end of the road and certification was refused in a way that would be recognized under Section 4.2, and you're not really making that all that, you're not making that argument all that clear in that regard. Your Honor, I believe that in the papers below and attached, there were the e-mails where the communications were made, and if specifically on... Yeah, but on communication back and forth, discussing a deal and who's going to agree or comply and all that, that doesn't really definitively inform as to whether or not the final determination between the parties would be for purposes of Section 4.2. Well, Your Honor, what First Brands ended up doing, I think I've clearly explained what the e-mails actually say, and they are attached to the papers. I'm sorry, they're on my laptop computer if I need to pull them up, but what First Brands did do was on June 7th, 2022, it communicated directly in a letter to the ESPRO agent that there was a dispute under... Under Section 7. That's right, Your Honor. Am I correct that you never sent anything to Key Bank that purported to be a written certification of anything? You're absolutely correct, Your Honor, because First Brands' position was it couldn't do it because of this back and forth, and it wasn't going... In its view, it wasn't going to act in bad faith by essentially telling a lie, and that is where everything turned in the district court, because the district court judge, Judge Calabresi, he specifically looked at 4.2, and he thought it's very clear. There's four categories that you can go under. Counselor? Yes? You may continue if you wish, but we'll have to start taking time from your rebuttal time. Your Honor, I'll continue if that's okay. I don't need to... How much time would you like to take from your rebuttal time? All of it. All right. That's fine, Your Honor. I think that you have the papers and... That gives you another five minutes. It's not funny. Would the clerk reset the time,   Thank you, Your Honor. If I may, what happened here was the district court judge looked at Section 4.2, which in our view is a ministerial provision where the escrow agent has to do certain things so that the money can flow either way. It doesn't impact the ultimate right to the $500,000. That's clear from the letter of intent, and that's also clear in that Section 2 of the escrow agreement specifically says that the escrow agent is not to make findings of fact related to the truthfulness of any certification that it receives. It's a ministerial form agreement that KeyBank provided. The theory of recovery is one of bad faith and so-and-so, and that doesn't jibe with the agreement as to how the court, how the arrangement should be analyzed. I mean, there's no, the court can't infer bad faith from anything other than the activities of the parties, and so it's not, and yet that's really what you're asking the court to do, to let you avoid the terms of the agreement. And it just doesn't, the procedural, the procedural vehicle you chose does not fit well with the theory you're pursuing, I guess is my, what do you have to say about that? Your Honor, if you look at, if you look at the allegations in the complaint, admittedly they are not very clear. But if you, you can make out a bad faith claim, a breach of the covenant of good faith and fair dealing. Judge Calabresi said even if pled, that it wouldn't prevail. But essentially the, the... Because it would require some evidence. Well, the evidence would come through discovery, Your Honor, and we haven't even gotten to that stage. This is at the very beginning of the case. What we have here is Nina simply refusing to jointly certify when they did not reach a meeting of the minds and should have certified. But Judge Calabresi said, look at Section 4.2, these four provisions, there's no gap in the contract and therefore ultimately the money should flow to Nina and that's the ballgame. We don't agree with that, Your Honor. If you look at that situation, if you, and Judge Calabresi specifically said, and this is important, said, quote, I have little doubt that First Brands and likely Nina anticipated that First Brands would receive the earnest money it deposited in the event that the transaction proposed with Nina failed to materialize. That's page ID 343. Yet because it focused only on the mechanical nature of Section 4 to the detriment, to ignoring Section 2 where the escrow agent has no power to make fact finding, ignoring Section 7 where it says if there's a dispute of ownership that arises the escrow agent can be instructed to hold on to the money. He came up with this reading that essentially said 4 determines everything. But it doesn't. Section 4.2 determines everything. It simply is a mechanical procedure to move money, but First Brands could still bring a complaint and say Nina did something wrong here. And because of that, we should be allowed, if all everything else fails in these arguments that are in the papers, we should be allowed to amend the complaint at this early stage to act, add a breach of covenant of good faith and fair dealing and go forward with this case, let discovery proceed and let First Brands try to vindicate its rights. We haven't had that here at all. This case is dead on arrival and opposing counsel has argued that a lot of time has passed, et cetera, et cetera, but the reality is this is only a motion to dismiss at the very beginning of the case. It's taken a while through briefing and everything else, but there hasn't even been an amended complaint in this case. Is the money literally still standing with KeyBank? It is, Your Honor. So there is no prejudice at this point if we were allowed to go back to the court and add that in. And Nina has argued that First Brands never moved for the right to amend the complaint. That's flatly not true. If you look in the opposition brief to Nina's motion to dismiss in the conclusion section, it specifically asked for the right if the court were to grant Nina's motion to dismiss to amend the complaint to add this claim in. They did not make a specific motion with the amended complaint attached, which is usually the way you operate. Admittedly, Your Honor, I concede that point that it would normally, you could do a separate motion, but it is sometimes done in this manner as well. And they preserved their right by asking for it. They also asked for it at oral argument. And to be fair, Judge Calabresi actually went into it and he said even if pled, this breach of the covenant of good faith and fair dealing, he couldn't grant it or he doesn't see it as something that would survive a motion to dismiss. And so he actually ruled on that request. We just simply don't agree, Your Honor. That's it. Thank you very much for your argument. Thank you, Your Honor. We'll hear from the opposing counsel. May it please the court, Brady Hagan, counsel for Nina Inc., the appellee in this matter. Your Honors, this is a straightforward contract dispute over the proper recipient of an earnest money deposit held in escrow under an escrow agreement. The district court correctly held that Nina is entitled to the escrow funds under the plain and unambiguous terms of the controlling escrow agreement. This court should affirm for three main reasons. First, the district court correctly interpreted the escrow agreement and found that Nina is entitled to the escrow funds under section 4.2. It did not find an ambiguity in the contract because there is no ambiguity in the contract. So the lower court properly dismissed First Brandt's declaratory judgment claim under Rule 12. Second, First Brandt has not argued ambiguity beyond passing any window in reference until this appeal. It is presenting a fundamentally different case to this court than it did to the district court where it consistently appealed to an alternative interpretation of the plain language of the escrow agreement. This court should find these ambiguity arguments were not preserved for the court's review and in any case don't justify reversal on the merits. Third, the district court did not abuse its discretion in foreclosing First Brandt's an opportunity to amend because First Brandt's first never moved for leave to amend. It had 299 days litigating the case before the district court through which it could have amended its claim or at least sought leave. An amendment would have been futile for the reasons stated in the district court's opinion. What I didn't hear in First Brandt's argument was that First Brandt's request for leave was actually a request for an improper advisory opinion from the district court. It asked that if the district court found that it failed to state a claim then it should be allowed to amend its complaint. This makes First Brandt's request untimely and improper and while First Brandt dismisses it NINA would be prejudiced to an extent if after all this time First Brandt's were allowed to amend. So for these reasons among others the court should affirm Judge Calabrese's thorough and well-reasoned opinion. Let me ask you about the way this apparently clear and definitive language was supposed to operate. If First Brandt's had sent the letter under 4.2B saying, you know, dear NINA please confirm in writing that you are willing to consummate the acquisition on X terms. If they had done that what would have been your response? Wouldn't it have been, we're not willing to consummate it on these terms? Well if that were posed to NINA in those sort of unequivocal terms rather than what First Brandt's did say here which was. Understand I'm trying to figure out how this, if this is so unambiguous how would it have operated? So in that situation First Brandt's could have certified to KeyBank under section 4.2B that NINA had declined to consummate. And maybe NINA would dispute that under section 7 but there's a mechanism under there. So you're saying that indeed in a sense even though it's contrary to your ultimate position it's unambiguous if they had moved with better lawyering at a better time that it would have operated in the way that I just set forth. Yeah that's correct your honor and I think it's important to note here that when May 31st 2022 came and went and KeyBank had not received any sort of certification from either of the parties and consummation had not occurred, section 4.2D2 provides that NINA gets the funds under those circumstances. But you didn't, just as an aside, you didn't make a demand on KeyBank under those terms? No we haven't until after the district court's order we did send a notification to KeyBank that there was an order. First Brandt's filed a notice of appeal and so that stayed it or at least prevented it for a while. You know there were a couple questions from the court, I think we just addressed the section 4.2B issue. First Brandt's denied that it could move under section 4.2B to notify KeyBank because Nina said that it was willing to go through. Under this agreement, First Brandt's could have done so anyway. If it felt in good faith that First Brandt's was not willing to go through with the transaction as it originally envisioned, it could certify that to KeyBank and again that could be subject to a dispute under section 7. But what happened here, and this is according to First Brandt's own complaint, May 31st 2022 came to pass, no certification was sent, no consummation had occurred. You know there was a couple comments from my friend as well that, excuse me, I just the court said that, let me move on to the next one if you don't mind, there's two sets of issues in this appeal and it's a straightforward contract interpretation issue. The first is whether the district court correctly interpreted this simple contract that was negotiated by two sophisticated parties. These parties were represented by sophisticated counsel and it ultimately held that Nina was entitled to the funds based on the undisputed allegations and conditions set forth in First Brandt's complaint. The second set of issues goes to whether the district court abused its discretion in denying leave to amend and the answer is that the district court did not abuse its discretion. I want to clarify just in case Nina's brief wasn't clear on this point, it did say that the standard review was abuse of discretion, but the reason for that is because there are multiple reasons that the district court stated on the record for why First Brandt's was not in the opinion in order so that even if you added this claim to the covenant of good faith and fair dealing that it would be futile anyway. That was correct for the reasons stated in that opinion, but it also noted that really First Brandt's had not moved decisively for leave to amend. What it did was it requested an advisory opinion from the district court and the district court observed this in oral argument, page ID 362, the district court noted it feels like it might be an advisory opinion at the point if I'm writing an opinion one way or the other and then everybody amends their respective claims and counterclaims in response to my  It's one thing if you amend in response to a motion that the other side files, you may have the right to do that under Rule 15. It feels like an advisory opinion if you do it in response to the court ruling, at least in some circumstances. So there's this advisory opinion reason that the court articulated on the record. It also articulated the delay on First Brandt's part. At oral argument, when First Brandt's made this request, this sort of contingent request for leave to amend, the district court responded, well the time to amend the complaint has passed, which obviously implies that we're here at the end of oral argument, we've briefed two motions to dismiss, six briefs, and you're asking me to amend the complaint without filing a motion. So there are multiple reasons despite or other than futility that the district court denied leave to amend, so the standard review should be abuse of discretion and I submit that the district court did not abuse its discretion in denying leave in this circumstance. You know, if the court has no further questions, I think I'll take my seat at this point, I think. Apparently not. Thoroughly briefed. Okay. Thank you. I appreciate it. Thank you. Well, that concludes the arguments for this case. The case is submitted.